USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _________________
DATE FILED: 8/5/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL ANTHONY THOMAS,

Plaintiff,

-against-

CHILD SUPPORT ENFORCEMENT SERVICES *dba* TITLE IV-D with Its Registered Office, EILEEN M. STACK, ILIANA RODRIGUEZ, PATSY M. ARAVENA, WESTCHESTER COUNTY DEPARTMENT OF SOCIAL SERVICES,

Defendants.

25-cv-2438 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Pro se Plaintiff Michael Anthony Thomas, suing as "Michael-Anthony: Thomas R/O" ("Plaintiff"), seemingly objects to being required to pay child support under New York State law and brings this action for intentional infliction of emotional distress, slander, and fraud. (*See generally* Complaint, ECF No. 1.)

Defendant Eileen M. Stack ("State Defendant"), sued in her official capacity as Deputy Commissioner of Child Support Services for the New York State Office of Temporary and Disability Assistance ("OTDA"), moves to dismiss the Complaint pursuant to Federal Rules of Civil Procedure ("FRCP") Rules 12(b)(1) and 12(b)(6). (ECF No. 30.) Defendants Child Support Enforcement Services *dba* Title IV-D with its Registered Office, Iliana Rodriguez, and Westchester County Department of Social Services (collectively, "County Defendants") move to dismiss the Complaint pursuant to FRCP Rules 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6). (ECF No. 79.) For the reasons that follow, Defendants' motions are GRANTED.

## FACTUAL BACKGROUND

The Complaint gives little factual context for this action beyond the allegation that an unspecified defendant "claimed" that Plaintiff owes "$145/ weekly plus $4000 debt along with interest" and that, following an accident, "[P]laintiff was due to receive unemployment money that the child support agency . . . took by putting a lien on [P]laintiff's bank account." (*Id.* ¶¶ 4, 6.) Plaintiff further alleges that he has "gone through an administrative process," that "the defendant has failed to produce any documents/agreement which shows . . . [P]laintiff is not liable for any loan," and that his driving privileges have been suspended and he has been banned from traveling. (*Id.* ¶ 5.)

Defendants' moving papers provide greater factual context. On or about May 23, 2022, an individual who resides in Connecticut and is the custodial parent of a child born in 2019, and for which the Plaintiff acknowledged paternity, filed a petition in Connecticut pursuant to the Uniform Interstate Family Support Act ("UIFSA"), to compel child support from the Plaintiff, who resides in New York (the "UIFSA Proceeding"). (County Defs. Br. at 2; Declaration of Christopher J. Inzero ("Inzero Decl.") at ¶ 3). On or about July 12, 2022, the petition filed by the custodial parent in Connecticut, was deemed filed in the New York State Family Court, County of Westchester (the "Westchester County Family Court"), whereby a child support enforcement action on behalf of the custodial parent was commenced against Plaintiff. (*Id.*; Inzero Decl. at ¶ 4). By Order dated December 8, 2022, the Westchester County Family Court issued a Temporary Order of Support in the UIFSA Proceeding, obligating Plaintiff to pay weekly basic child support in the amount of $50.00. (*Id.*; Inzero Decl. at ¶ 5). By Order rendered March 28, 2023, and dated April 4, 2023, the Westchester County Family Court ordered Plaintiff in the UIFSA Proceeding to pay basic child support in the weekly amount of $78.00, and found Plaintiff liable for basic child support arrears

in the amount of $3,690.00. (*Id.*; Inzero Decl. at ¶ 6). By Order rendered March 28, 2023, and dated April 26, 2023, the Westchester County Family Court in the UIFSA Proceeding amended its prior child support order, and further ordered Plaintiff to pay the cost of child care in the weekly amount of $19.00, for a combined, total weekly payment of $97.00. (*Id.*; Inzero Decl. at ¶ 7).

On or about May 1, 2024, the custodial parent filed a violation petition in the UIFSA Proceeding, alleging that Plaintiff had violated his child support obligations and owed more than four months' worth of child support payments. (*Id.*; Inzero Decl. at ¶ 8). By Order dated June 11, 2024, the Westchester County Family Court in the UIFSA Proceeding found Plaintiff in violation of his child support obligations, by which it continued the child support order against him, and determined that he was in arrears in the amount of $2,983.00. (*Id.*; Inzero Decl. at ¶ 9). By Order dated June 11, 2024, the Westchester County Family Court entered a money judgment against Plaintiff in the UIFSA Proceeding for $2,983.00, regarding his child support arrears. (*Id.*; Inzero Decl. at ¶ 10). Plaintiff's present total weekly payment obligation in the UIFSA Proceeding is $145.50, calculated as $78.00 for basic child support, $19.00 for child care, and $48.50, a surcharge applied towards his child support arrears and calculated as 50 percent of the combined total of his $78.00 weekly payment for basic child support, and $19.00 weekly payment for child care. (*Id.*; Inzero Decl. at ¶ 11).

Between November 2022 and October 2023, Plaintiff made child support payments, but then stopped. (State Def. Br. at 5.) Subsequently, in May 2024, the Westchester County support collection unit filed a violation petition. (*Id.*) By entry of money judgment dated June 11, 2024, the Westchester County Family Court found that Plaintiff had violated the child support order and the court issued a money judgment against Plaintiff in the amount of $2,983. (*Id.*) Administrative child support enforcement efforts are ongoing. (*Id.*)

## PROCEDURAL BACKGROUND

Plaintiff commenced this action on February 18, 2025 in the United States District Court for the Northern District of New York ("N.D.N.Y."). (ECF No. 1.) On February 21, 2025, Plaintiff wrote to N.D.N.Y. in a letter stating: "I recently mailed in a complaint and filing fee to the [N.D.N.Y.] venue approximately a week ago. The correct venue should have been the US Southern District of New York. I would like to request a return of the complaint and filing fee." (ECF No. 4.) In response, on March 2025, Judge Paul J. Evangelista, United States Magistrate Judge for N.D.N.Y., issued a Decision and Order, transferring this action to the U.S. District Court for the Southern District of New York ("S.D.N.Y.") pursuant to 28 U.S.C. § 1391(b), which governs venue. (Venue Transfer Order, ECF No. 6.)

On September 16, 2025 and December 29, 2026, State Defendant and County Defendants, respectively, moved to dismiss the Complaint. (ECF Nos. 30, 79.) Plaintiff filed an opposition to each motion (ECF Nos. 36, 44) and several "notices" in further support thereof. (ECF Nos. 60, 61.)

## LEGAL STANDARD

### I. FRCP 12(b)(1)

Under FRCP 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction…when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (citation and internal quotations omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). In assessing whether there is subject matter jurisdiction, the Court must accept as true all material

facts alleged in the complaint, *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009), but "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits…." *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

## II. FRCP Rule 12(b)(2)

On a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing that the Court may exercise personal jurisdiction over the defendant. *See In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). "Where…a district court relies on the pleadings and affidavits, …[the] plaintiff[] need only make a prima facie showing of personal jurisdiction over the defendant." *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008); *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998). To satisfy that burden, the plaintiff must plead facts that, if true, are sufficient to establish personal jurisdiction, and may do so through affidavits and other supporting materials containing factual averments that, if credited, would establish jurisdiction over the defendant. *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001); *Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*, 975 F. Supp. 562, 564 (S.D.N.Y. 1997). In evaluating the motion, the Court must construe the pleadings and any supporting materials in the light most favorable to the plaintiff, credit the plaintiff's factual allegations, and resolve all doubts in the plaintiff's favor. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013). However, conclusory, non-fact-specific jurisdictional allegations or legal conclusions couched as factual allegations are insufficient to establish a prima facie case of personal jurisdiction, and the Court need not draw argumentative inferences in the plaintiff's favor. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).

**III. FRCP Rule 12(b)(5)**

"[A] Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint." *Haidon v. Budlong & Budlong, LLC*, 318 F. Supp. 3d 568, 575 (W.D.N.Y. 2018). "Rule 12(b)(5) permits a party to move to dismiss [a] complaint for insufficient service of process." *Grp. One Ltd.*, 523 F. Supp. 3d at 332 (citing Fed. R. Civ. P. 12(b)(5)); *see Jackson*, 2015 WL 4470004, at *4 ("Rule 12(b)(5) governs the defense of insufficient service of process."). "When a defendant moves for dismissal for inadequate service of process pursuant to Rule 12(b)(5), the plaintiff bears the burden of establishing that service was sufficient." *Vega v. Hastens Beds, Inc.*, 339 F.R.D. 210, 215 (S.D.N.Y. 2021). In considering such a motion, "the Court may look beyond the pleadings, including to affidavits and supporting materials, to determine whether service was proper." *Id.*; *see Grp. One Ltd.*, 523 F. Supp. 3d at 332 ("In considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, a court must look to matters outside the complaint to determine whether it has jurisdiction.").

**IV. FRCP Rule 12(b)(6)**

Under FRCP Rule 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The Second

Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit."[1] *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Finally, "where, as here, [P]laintiff proceeds *pro se*, the court must "construe [] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s].'" *Corbett v. Annucci*, 2018 U.S. Dist. LEXIS 24291, 2018 WL 919832, at *5 (S.D.N.Y Feb. 12, 2018); *Askew v. Lindsey*, No. 15-CV-7496 (KMK), 2016 U.S. Dist. LEXIS 126543, 2016 WL 4992641, at *2 (S.D.N.Y. Sept. 16, 2016) (alterations in original) (citing *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)). However, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law.'" *Id.* (quoting *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)).

**DISCUSSION**

State Defendant moves to dismiss the Complaint pursuant to FRCP Rules 12(b)(1) and 12(b)(6) and County Defendants move to dismiss the Complaint pursuant to FRCP Rules 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6). The Court will address each argument in turn.

---

[1] This district also has held that a court "may consider new facts raised in opposition papers to the extent that they are consistent with the complaint, treating the new factual allegations as amending the original complaint," when a plaintiff proceeds pro se. *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (citing *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013)). Accordingly, for purposes of resolving this motion, the Court accepts as true the factual allegations in Plaintiff's Complaint and opposition papers, to the extent they are all consistent, and draws all reasonable inferences in Plaintiff's favor.

## I. Lack of Subject Matter Jurisdiction

State Defendant and County Defendants argue that the Court lacks subject matter jurisdiction over Plaintiff's claims because: (1) the Eleventh Amendment bars Plaintiff's claims for monetary damages against State Defendant; (2) the Rooker-Feldman doctrine bars jurisdiction over child support orders issued by New York State courts; (3) the claims are barred under the domestic relations abstention doctrine; (4) Plaintiff fails to plead a federal question; and (5) Plaintiff lacks standing to sue State Defendant.

### 1. Money Damages

The Eleventh Amendment precludes federal courts from hearing suits filed against a state absent the state's consent or an express statutory waiver of immunity. U.S. Const. amend. XI; *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55-56 (1996). Suits brought against state officials acting in their official capacities are treated as suits against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). Title IV-D does not waive state sovereign immunity. *Chris H. v. New York*, No. 16-cv-6807, 2017 WL 2880848, at *7 (S.D.N.Y. July 5, 2017), *aff'd*, 764 F. App'x 53 (2d Cir. 2019) (summary order) ("[T]o the extent that Plaintiff suggests that the State's receipt of [federal] Title IV-D funds resulted in a general waiver of immunity that entitles him to sue the State and state officials, the argument is incorrect. Title IV-D of the Social Security Act, which funds agencies tasked with collecting child support payments, does not condition receipt of funds on a waiver of sovereign immunity nor does it prohibit discrimination by recipients of such funds."). Further, the State of New York has consented to the exclusive jurisdiction of the New York Court of Claims for any suits regarding "the torts of its officers or employees while acting as such officers or employees." N.Y. Ct. Claims Act §§ 8-9.

Here, Plaintiff seeks "damages" in the amount of $3,000,000 and punitive damages in the amount of $50,000. (Compl. ¶ 4.) The State of New York has not consented to federal court jurisdiction for suits seeking monetary damages in official capacity cases. *See* N.Y. Ct. Claims Act §§ 8-9 (waiving immunity for damages suits *only* in the New York Court of Claims); *see also Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Sinhogar v. Parry*, 53 N.Y. 2d 424, 431 (N.Y. 1981) (explaining that damages claims against New York State officials sued in their official capacity can only be brought in the New York Court of Claims). Accordingly, Plaintiff's claims for monetary damages from State Defendant cannot be brought in this Court and must be dismissed.

**2. Rooker-Feldman Doctrine**

The Rooker-Feldman doctrine bars district courts from exercising appellate jurisdiction over state court judgments. *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 476, 482 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 415-16 (1923); *see also Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) ("Underlying the Rooker–Feldman doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions."). The doctrine prevents "state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] district court proceedings commenced" from "inviting [federal] district court review and rejection of those judgments." *See Exxon Mobil Corp. v. Saudi Basic Ind. Grp.*, 544 U.S. 280, 283-84 (2005). Rooker-Feldman applies when: (1) the federal court plaintiff "lost in state court"; (2) that plaintiff complains of injuries "caused by a state-court judgment"; (3) the plaintiff has invited a federal

district court to review and reject that state-court judgment"; and (4) the state-court judgment was rendered before the federal case was initiated. *Hoblock*, 422 F.3d at 85; *accord Dorce v. City of N.Y.*, 2 F.4th 82, 101 (2d Cir. 2021).

Here, a liberal reading of Plaintiff's Complaint suggests that he is challenging the Westchester County Family Court's orders by seeking termination of, and compensation for, his participation in the New York State child support program pursuant to those orders. Plaintiff seeks, *inter alia*, the "return" of money allegedly "collected illegally" by the State. (Compl. at 4.) Granting that relief would require this Court to overturn the Westchester County Family Court's orders directing Plaintiff to pay child support for his minor child. Plaintiff's claims are therefore barred by the Rooker-Feldman doctrine. Plaintiff "lost in state court" for purposes of Rooker-Feldman because the Westchester County Family Court entered child support orders against him, and this action plainly challenges those orders. In effect, Plaintiff asks this Court to review and reject the Westchester County Family Court's determination that he was obligated to pay child support.

New York federal courts "have repeatedly invoked" the Rooker-Feldman doctrine in cases "challeng[ing] family court decrees setting child support arrears." *Fernandez v. Turetsky*, No. 12-cv-4092, 2014 WL 5823116, at *4 (E.D.N.Y., Nov. 7, 2014) (citing, *inter alia*, *Sorensen v. Suffolk Cnty. Child Support Enf't Bureau*, No. 7-cv-07355, 2009 WL 580426, at *6-7 (E.D.N.Y. Mar. 5, 2009)); *see also Hart v. Office of Attorney Gen. – Child Support Div.*, No. 24-cv-3123, 2024 WL 3696366, at *3 (S.D.N.Y. July 31, 2024) (holding that a plaintiff's request for reimbursement of already-made child support payments was barred by the Rooker-Feldman doctrine because the plaintiff "appear[ed] to be asking this Court to overturn decisions rendered by the New York State Family Courts").

Accordingly, to the extent Plaintiff is challenging child support orders, this Court dismisses Plaintiff's claims against State Defendant and County Defendants for lack of subject matter jurisdiction pursuant to the Rooker-Feldman doctrine.

**3. Domestic Relations Abstention Doctrine**

Federal courts "presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts," as those courts have "greater interest and expertise" in these issues. *Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d. Cir. 1990) (internal citations omitted) (delineating the scope of the matrimonial exception to federal jurisdiction); *see also Deem v. DiMella-Deem*, 941 F.3d 618, 620 (2d. Cir. 2019) (affirming dismissal pursuant to domestic relations abstention doctrine of, *inter alia*, Section 1983 claims that "[were], or [were] on the verge of being, about child custody," where the plaintiff had "alleged no facts indicating that there [was] any obstacle to a full and fair determination of his child custody issues in state courts").

Here, Plaintiff requests federal court intervention in child support determinations rendered by the Westchester County Family Court, thereby raising claims that are, at a minimum, on the verge of being matrimonial in nature. *See Deem*, 941 F.3d at 620; *Bent v. NYC Off. of Child Support Servs.*, No. 25-CV-05364 (HG) (JAM), 2025 WL 2938678, at *2 (E.D.N.Y. Oct. 15, 2025) (abstaining from exercising federal question jurisdiction because Plaintiff is seeking relief for claims "aris[ing] directly from the child support action") (collecting cases); *Legister v. Radowitz*, No. 20-cv-9330, 2020 WL 7405672, at *4 (S.D.N.Y. Dec. 16, 2020) (same where plaintiff's claims arose from the Family Court's orders and judgments and their enforcement).

In addition, Plaintiff has alleged no facts indicating that the Westchester County Family Court cannot fully and fairly determine his child support obligations. (*See generally* Complaint.)

Accordingly, this Court dismisses Plaintiff's claims against State Defendant and County Defendants for lack of subject matter jurisdiction pursuant to the domestic relations abstention doctrine.

**4. Federal Question**

Federal question jurisdiction provides federal district courts with subject matter jurisdiction over suits "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under the "well-pleaded complaint rule," "federal-question jurisdiction generally 'exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *State by Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 132 (2d Cir. 2023) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392-93 (1987)). Here, Plaintiff asserts only state law claims—claims of intentional infliction of emotional distress, slander, and fraud. (Compl. ¶¶ 9-27.) Accordingly, Plaintiff's Complaint fails to establish federal question jurisdiction and is dismissed.

**5. Plaintiff's Standing to Sue State Defendant**

The "irreducible constitutional minimum" of Article III standing consists of three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Id.* (citation cleaned up) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975).

An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized . . . ; and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted). A liberal interpretation of the Complaint suggests that Plaintiff is arguing that he is being harmed by having to pay child support and should not be required to make such payments. While Plaintiff perhaps meets the first element of Article III standing, he fails to meet the remaining two.

The traceability requirement for Article III standing "focuses on whether the asserted injury could have been a consequence of the actions of the defendant rather than being attributable to the 'independent' acts of some other person not before the court." *Chevron Corp. v. Donziger*, 833 F.3d 74, 121 (2d Cir. 2016) (quoting *Lujan*, 504 U.S. at 560). Here, Plaintiff cannot demonstrate that any injury he may have suffered—either by being designated a noncustodial parent required to pay child support or due to the administrative enforcement of child support orders against him—is traceable to State Defendant because neither State Defendant nor OTDA determine who must pay child support. Such determination is made by a family court.

For similar reasons, Plaintiff cannot show that any purported injury is redressable by a favorable judicial decision. *See Lujan*, 405 U.S. at 561. Plaintiff seeks: (1) the "return" of "the money received from other companies/agencies collected illegally"; (2) restoration of Plaintiff's passport; (3) damages in the amount of $3,000,000; (4) punitive damages in the amount of $50,000; and (5) "costs, interest and attorney's fees." (Compl. ¶ 4.) Even if this Court were to award Plaintiff the relief he seeks, State Defendant could not actually provide any of that relief. First, because neither State Defendant nor OTDA determines who must pay child support, neither party has the authority to terminate a noncustodial parent from the New York State child support program. Second, there are no funds to be refunded from the New York State child support program to

Plaintiff, as those funds were properly disbursed to the custodial parent. Lastly, as explained *supra*, because the State of New York has sovereign immunity under the Eleventh Amendment, State Defendant cannot be ordered to pay damages by this Court. *See Ying Jing Gan*, 996 F.2d at 529 (explaining that state officials sued in their official capacity for damages may invoke state sovereign immunity); N.Y. Ct. Claims Act §§ 8-9 (waiving state sovereign immunity for damages suits only in the New York Court of Claims). Accordingly, Plaintiff lacks Article III standing to sue State Defendant and Plaintiff's claims against it must be dismissed.

## II. Additional Grounds of Dismissal

### 1. Failure to State a Claim

State Defendant and County Defendants argue that Plaintiff has failed to state a claim upon which relief can be granted. Defendants are correct. First, as explained *supra*, given Plaintiff's relief requests, State Defendant is not a proper party to this suit. Second, County Defendants are authorized and obligated to enforce Plaintiff's child support obligations. In New York, the local social services districts are obligated to establish, modify, and enforce child support orders. (Social Services Law ("SSL") § 111-c (4)(a).) The County of Westchester's Department of Social Services is designated as a local social services district. *See* SSL §§ 2 (7), and 61. Pursuant to the Department's obligation to enforce child support orders, with regard to a child support obligor, it is authorized to: i) attach and seize assets held in financial institutions, (SSL § 111-t, and Civil Practice Law and Rules (CPLR) § 5232); ii) intercept unemployment insurance benefits, (SSL § 111-j, and CPLR § 5241(6)), iii) intercept or seize the proceeds of settlements, (SSL § 111-t (1)(b), and CPLR § 5232), and iv) notify the NY State Department of Motor Vehicles that the obligor's driving privileges should be suspended, (18 NYCRR § 346.12). Plaintiff alleges that County Defendants have unlawfully put a lien on his bank account to collect unemployment insurance

benefit proceeds, taken proceeds from Plaintiff's settlement of a legal action, and caused suspension of his driving privileges. (Compl. at 2.) However, County Defendants are empowered to enforce child support orders in the manner in which Plaintiff complains. Plaintiff also alleges that he has been banned from traveling. (*Id.*) However, any action taken on Plaintiff's passport or with regards to Plaintiff's traveling privileges would have been by the United States Secretary of State, not State Defendant or County Defendants. Accordingly, Plaintiff has failed to state a claim upon which relief can be granted and the Complaint must be dismissed.

### 2. Lack of Personal Jurisdiction and Insufficient Service of Process

Defendants argue that Plaintiff served them with insufficient process; specifically, Plaintiff served State Defendant with only a summons and no complaint and served County Defendants with the Complaint and no summons. (*See* State Def. Br. at 6; County Def. Br. at 4.) Because all of Plaintiff's claims are subject to dismissal pursuant to Rule 12(b)(6) for failure to state a claim, the Court need not reach Defendants' Rule 12(b)(5) arguments concerning insufficient service of process and, by extension, lack of personal jurisdiction. *See, e.g.*, *Harrigan v. City of N.Y.*, No. 19-CV-3489, 2020 WL 2555307, at *2 n.2 (S.D.N.Y. May 20, 2020) ("Because the Court dismisses the claims on 12(b)(6) grounds, it need not address the 12(b)(5) standards"); *Taylor v. Westor Cap. Grp.*, 943 F. Supp. 2d 397, 400 (S.D.N.Y. 2013) ("[D]ismissal under Rule 12(b)(6) renders unnecessary any further consideration of the parties' dispute over service of process under Rule 12(b)(5).") (collecting cases).

## CONCLUSION

For the foregoing reasons, State Defendant's and County Defendants' motions to dismiss are GRANTED. Because amendment cannot cure this Court's lack of subject matter jurisdiction over Plaintiff's claims pursuant to the Rooker-Feldman doctrine and the domestic relations

abstention doctrine, amendment to Plaintiff's Complaint would be futile. Accordingly, Plaintiff's Complaint is dismissed in its entirety without prejudice for Plaintiff to renew in the appropriate state court forum.

The Clerk of Court is directed to terminate the motions at ECF Nos. 30 and 79 and this action, to mail a copy of this endorsement to pro se Plaintiff at the listed address on the docket, and to show service on the docket.

Dated: August 5, 2026
White Plains, New York

SO ORDERED.

NELSON S. ROMÁN
United States District Judge